IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.                                                              Case No.: 22-cr-00114-wmc

MATTHEW E. QUAGLIERI,

Defendant.

GOVERNMENT'S SENTENCING MEMORANDUM

For years, the defendant abused the trust of students, parents, and the Sun Prairie school system and secretly recorded dozens of students using urinals in the boys' bathroom at the school where he was a music teacher. The victims were not unknown children the defendant met online, as we often see in these types of cases. Rather, the defendant was a teacher who should have been a trusted adult to each of these students.  Instead, he stood right next to each of the children surreptitiously and stealthily recording them urinating.  Prior to being discovered by one of his victims, there was no indication that the defendant had any intention of stopping.  He deserves a sentence that reflects the full impact of his actions.  The government believes that a below-guideline sentence of twenty years in custody is that sentence.  Notwithstanding the guidelines, a 20-year sentence is warranted based on the statutory sentencing factors.  Anything less than that would depreciate the seriousness of the defendant's conduct.

SENTENCING FACTS

Since 2017 or 2018, nearly every time the defendant used the restroom, he powered on his iPad, made sure it was recording, put it under his arm, went into the student bathroom near his classroom, and recorded students while they were urinating. (R. 46, ¶¶ 13, 15). Ultimately he transferred the videos to an external hard drive, deleted the videos he found "boring" and masturbated to the ones he kept. (Id.). He made stills of some of the videos and kept them with him on his personal iPad, the one he had with him all the time. (Id., 14).

The students were concerned that the defendant had his iPad in the bathroom and made passing comments about it. (R. 46, ¶ 19). In some of the videos recovered, it appears the child is turning away from the defendant, attempting to shield himself from the defendant while urinating.

On October 7, 2022, a parent called the police in Sun Prairie after their brave son reported that the defendant brought his iPad into the school bathroom. (R. 46, ¶ 10). The child noticed it other times and expressed concerns he was being recorded. (Id.). Indeed, he was. Along with dozens of other middle school boys.

Officers went to the school to investigate. They spoke to the defendant who initially lied to them, admitting he carried his iPad with him into the bathroom, but denying he had ever recorded anyone. (R. 46, ¶ 11). He said officers could review his personal iPad, however, when the principal went with the defendant to retrieve it, the defendant attempted to delete videos. (Id.). After the principal attempted to stop the

2

defendant from destroying evidence, the principal and the defendant got into a physical altercation. (Id., ¶12).

Once the defendant realized that his illegal conduct was about to be discovered, he admitted to recording young boys in the bathroom. (R. 46, ¶ 13). He went on to tell the officers that he created the videos for sexual release and that they were fantasies he was creating, hoping to fulfill one day. (Id., ¶ 15).

The defendant's numerous crimes were not spur of the moment - they were premeditated. And they would have continued had not a brave student reported the defendant's conduct to his parents.

## THE VICTIMS

The defendant captured explicit images of at least 39 different boys, 37 of whom have been identified by name. Police were unable to identify 11 other boys. The defendant recorded some boys numerous times. The victims ranged in age from 11 to 14.

This case has a unique victim dynamic in that many of the parents opted not to tell their child that the defendant victimized them. And some parents have chosen not to provide victim impact statements or to exercise their rights in an effort to keep their child's victimization a secret, both from the child and from the public. (See R. 46, ¶ 24). This has created a "lonely and terrifying journey" for the parents who have opted to participate in the process. The parents have been suffering in silence and anonymity to protect their children, keeping others from knowing that they are victims of the defendant.

However, as noted by one parent, even the boys who don't know they were victimized were devastated when they learned that about the defendant's conduct and questioned whether they were, in fact, a victim.

And now 100s of Sun Prairie middle school boys are left in a difficult situation, - do they try to find out if they are in fact a victim, or do they wonder about it for the rest of their life?

So while many of the boys don't know they were recorded, the parents are dealing with the stress of keeping it a secret, worrying about their child finding out, and hoping their child doesn't ask them about it so they don't have to decide whether to lie to their child about what happened.

Meanwhile, the victims who did provide written statements show how devastating the crime was. Feelings expressed by one of the child victims include anger, anxiety, sadness, depression, and fear. He had nightmares, experienced school stress, and has lost trust in others. This child is currently unable to use public restrooms, which has been a huge obstacle, affecting his daily life from school, to road trips, and other events. The child's parent reports that the child "feels humiliated and does not want others to know what happened."

In addition to affecting the child victims, the defendant's crimes also impacted their families. A father reported he "has lost a lot of trust in the public school system" which he has to deal with as he has three elementary aged children, and his son still has years of school to go. Other parents feel like "failures" and have questioned their ability as a parent.

4

So, no matter how each family decides to cope with what happened, each of them will have a life affected by the defendant. As one parent said, "what he left behind in terms of damage, to victims, parent, and colleagues will never be forgivable or forgettable."

## ARGUMENT

In sentencing the defendant, Title 18, United States Code, Section 3553(a) directs this Court to focus on who the defendant is and what the defendant did (Section 3553(a)(1)), and to address various societal goals in sentencing (Section 3553 (a) (2-7)).

Notably, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant. Rather, a correct application of these factors to any case involves a balancing of all the factors, which also include the guidelines, the defendant's criminal conduct, and its impact upon the victims.

The Probation Office correctly calculated the defendant's guidelines at 292-365 months, capped by statute at 240 months. Notably, the guideline calculations do not include enhancements the Court normally declines to apply, such as use of a computer. Rather the guidelines in this case are based entirely on the crime the defendant committed, the age of the victim involved, the number of victims, and the fact that the defendant was in a position of trust. (R. 46, ¶¶ 37-60). Even without the benefit of framework provided by the guidelines, the government believes a 20-year sentence is warranted based on the statutory sentencing factors.

    A.    Nature and Circumstance of the Offense and History and Characteristics of the Defendant

5

1. The offense

Day after day, week after week, year after year, the defendant opted not to use the staff bathroom at the Sun Prairie Middle School where he was a teacher, but instead, he turned on his iPad, put it under his arm, went into the student bathroom, stood right next to a middle school boy, and recorded the child urinating.

After the defendant recorded the child's exposed penis, he transferred the images to a thumb drive or a laptop, then transferred them to an external hard drive. He created the videos for "sexual release" and as fantasies he hoped to fulfill one day. (R. 46, ¶ 13). He captured screen shots from some of the videos and kept 185 of those, along with 50 videos on his iPad, which he always had with him to make more videos. (Id., ¶ 14).

The police told one victim's family that the defendant had routines he would follow. He had favorites. He knew which boys were in the bathroom on a particular day. If the bathroom was empty, he would go back later and see if anyone had entered the bathroom. His crimes were calculated and deliberate, not merely opportunistic.

Some of the students he recorded were in his band class. During those classes, he was able to physically touch the victims as he assisted them with their instruments and instructed them on their techniques. The children that he recorded were right there, relying on him to teach them, not fantasize about their genitals.

Because the defendant destroyed the videos he found "boring," we cannot know the full extent of his offense. What we do know however, shows that a 20-year sentence is warranted. We know that his conduct occurred for years, that he stood near the

6

children and recorded them, that he initially lied about his conduct, that he was sexually aroused by his recordings, that he fantasized about the boys, and that there are dozens of minor victims. The impact on the students who know they were victimized, all of the families, and the school as a whole, is devastating.

The defendant – in what our society often reveres as one of the most important roles in a child's life – committed one of the most serious violations of trust imaginable. Over the course of years and years, he repeatedly took secret video recordings of the victims at their most vulnerable and intimate moments – using the bathroom. This was not a one-time failure of judgment. It was a deliberate, calculated, and repeated course of conduct.

2. The defendant

As the defendant himself admitted, he was living two different versions of himself. (R. 46, ¶ 31). The defendant, along with other predatory teachers this court has seen, is in certain respects, every parent's worst nightmare: a predator hiding in plain sight. The defendant's perceived "normalcy" is what makes him so dangerous. He was a teacher, who in addition to each student's parents, was responsible for molding these children and preparing them for the future, not exploiting them as they used the restroom. While the defendant did not physically assault the victims in this case, his conduct was invasive and impacted numerous families, the school system, and the community.

The government recognizes that this case has some mitigating facts as well.[1] The defendant began sex offender treatment while this case was pending. There is no evidence that the defendant engaged in hands-on conduct. Nor is there evidence that the defendant shared the images. But the lack of evidence cannot assure the victims that it did not happen. Victims and their families will forever wonder about whether the images were shared, either in person or online. This is especially true where the victim's face can be seen, or a child is wearing distinctive clothing. So to the extent there are mitigating factors, they are far outweighed by the aggravating nature of the defendant's conduct.

    B.    Respect for the Law, Just Punishment, Adequate Deterrence, and Protection of the Public

Based on the egregious nature of the defendant's criminal misconduct, there is a compelling need to deter future similar conduct by him and other like-minded individuals with an interest in, and access to, children. As described above, the fact that the defendant appeared to be a functioning member of society contributed to his dangerousness; no one knew that he was exploiting his students even though he was doing it right under their noses. The defendant took advantage of the position of trust society gave him to satisfy his "sexual release." There is no reason to believe that

---

[1] The fact that the defendant has no prior record is not one of them. The defendant's record was taken into consideration in the calculation of his criminal history category, and it is not uncommon for people who assault children to have no criminal history. *See, e.g., United States v. Oberg*, 877 F.3d 261 (7th Cir. 2017). Moreover, it was the defendant's lack of a criminal history that allowed him to be a teacher and place him in the position to commit these crimes.

anything but a lengthy term in prison will deter him from committing similar offenses in the future.

The sexual exploitation of children through the surreptitious production of images and videos is an offense that cannot be tolerated in our society.  The sentence should deter the defendant from engaging in further criminal behavior, deter others from attempting to commit such awful crimes against children, and protect the public by ensuring that the defendant does not have another opportunity to victimize other children.  The goal of deterrence is realized if even one person is deterred. A lengthy sentence will accomplish this goal.

This defendant, through the crimes documented in this case, has shown himself to be serial offender with no demonstrated ability to control his behavior.  In fact, by his own admission, his behavior spanned over four to five years.  To accomplish the goals of sentencing – particularly deterrence and protection of the public – the defendant must be sentenced to a truly significant term of imprisonment.   He repeatedly victimized those whom he should have been protecting with no sign that he planned to stop before he was caught.

Here, in considering a just punishment that adequately reflects the seriousness of the crime, it is imperative for the Court to weigh the impact on the victims and their families.  Not only are the defendant's victims left in his wake, but the children's parents must now struggle with their own feelings of guilt and their struggle on whether to tell their child the truth or not.  That is a burden that no parent should ever have to bear.  Because of the defendant's actions, none of their lives will ever be the

same.  Additionally, the sheer volume of victims and the length of time that his actions occurred cannot be ignored.

A twenty-year sentence also recognizes that in addition to the more than 39 victims and their families who are impacted by the defendant's crimes, the citizens of Sun Prairie school system are impacted too.  These are members of the community whose children went to Sun Prairie middle school or who had the defendant as their teacher. While the defendant's conduct did not directly impact them since they were not recorded by the defendant, it indirectly impacts them as they may also be left with feelings of losing trust in the public school system, teachers, and have concerns about what may happen to their children while they are supposed to be safe at school.

The government recognizes that this is not the type of case that this Court sees frequently, and as such, it may be difficult to quantify in years "how much" is "enough" to adequately punish the defendant, deter similar criminal conduct, and protect the public.  While the government is asking for a lengthy sentence, it is entirely reasonable given the fact that the defendant systematically abused a position of trust to sexually exploit dozens of middle school boys, some of them multiple times.  A twenty-year sentence is not only reasonable, but necessary in this case to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same ways again, and for long-term protection of the public.  It also recognizes the mitigating factors present in this case, and the fact that the defendant pleaded guilty and avoided the need for the victims to testify at a trial.

C.     Similarly situated defendants

Finally, the Court should consider the sentences of similarly situated defendants. Sadly, this district has seen several recent cases where teachers exploited their students. The most similar defendants are Travis Greil and David Kruchten.  While all three cases involve teachers covertly recording their students over long periods of time, this case differs in significant ways, combining the worst elements of the other defendants' conduct.

Greil took "up-skirt" images of his victims in the classroom, where they were obviously dressed.  This Court sentenced Greil to eight years in prison.  Kruchten placed cameras in his students' hotel bathrooms to record them as they used the toilet and showered.  Judge Peterson sentenced Kruchten to 12 years in prison.

While Greil sat close to his victims while he exploited them, his victims were dressed.  And while Krutchen likely created nude images of his victims,[2] he was not in the same room as his victims when he did so.  This defendant's conduct is more invasive and personal.  He was physically present every time he invaded the privacy of children in an intimate setting.  As one parent noted, "he was inches away from the boys when he the videos were taken.  He saw their genitalia up close with his own eyes."

Nearly every day, over a four-to-five-year span, the defendant took his iPad with him when he used the bathroom ensuring he was always prepared to record a student

---

[2] Because Krutchen destroyed the images he created, we don't know exactly what they depicted.

11

at any moment. He repeatedly stood right next to a child, hundreds of times, and recorded that child with his penis exposed. This defendant's conduct is more egregious than that of either Greil and Kruchten and his sentence should reflect that.

## CONCLUSION

For all the foregoing reasons, the government respectfully recommends that this Court sentence the defendant to twenty years in prison to be followed by twenty years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Dated this 1st day of April 2025.

Respectfully submitted,

TIMOTHY M. O'SHEA
Acting United States Attorney

By:  /s/
ELIZABETH ALTMAN
Assistant United States Attorney

By:  /s/
LOUIS GLINZAK
Assistant United States Attorney